IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

PATTY S. LEWIS,

       Plaintiff,

v.                                  Civil Action No. 1:05CV34
                                            (STAMP)

JOHN E. POTTER,
Postmaster General,
United States Postal Service,

       Defendant.


**MEMORANDUM OPINION AND ORDER**
**GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND**
**DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

I.  Background

This action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. Plaintiff, Patty Lewis ("Ms. Lewis"), a former employee of the defendant, United States Postal Service ("USPS"), filed a complaint in this Court alleging that the USPS discriminated and retaliated against her on the basis of age, race, and sex. Ms. Lewis further alleges that following a mediation to resolve her discrimination claims, the USPS breached a settlement agreement that was allegedly reached between the parties at the mediation. Following discovery, the parties filed cross motions for summary judgment. Ms. Lewis's motion seeks summary judgment only as to Count III, the breach of contract claim. The USPS responded to the motion for partial summary judgment and Ms. Lewis replied. The USPS's motion seeks summary judgment in its favor on the entire amended complaint. Ms. Lewis filed a response in

opposition to the USPS's motion for summary judgment and the USPS replied.

## II.  Facts

In November of 2000, the USPS hired Patty Lewis to work as a casual employee[1] at the Clarksburg Processing and Distribution Facility in Clarksburg, West Virginia ("Clarksburg Facility").  In March 2001, the USPS hired Ms. Lewis as a transitional employee[2] at the Clarksburg Facility.  At all times relevant to the allegations in the amended complaint, Ms. Lewis worked the overnight shift (11:00 p.m. to 7:00 a.m.) which was known as "Tour 1."

In November 2003, the manager of the Clarksburg Facility, Benedict Grammes ("Mr. Grammes"), received a directive from the USPS Appalachian District Office ordering that the number of transitional employees employed at the Clarksburg Facility be reduced from five to three.  Following receipt of the directive, Mr. Grammes experienced some temporary health problems and went on sick leave.  In his absence, the Clarksburg Facility was run by an

---

[1]A "casual" employee with the USPS is a temporary employee who is not entitled to employee benefits, is not covered by any collective bargaining agreement, and is not entitled to join the union.

[2]A "transitional" employee is a non-career craft-level employee.  The position is substantially similar to that of a casual employee.  The key difference between casual and transitional employees is that transitional employees are generally retained year to year and earn annual leave.

acting plant manager named Debbie Johnson ("Ms. Johnson"), who was brought in from another postal facility.

On or about November 13, 2003, Ms. Johnson directed the Manager of Distribution Operations ("MDO") at the Clarksburg Facility, Troy Morgan, to implement the District Office directive by instructing supervisors on Tours 1 and 3 to choose one transitional employee from their respective Tours for release. Mr. Morgan gave this instruction to Raymond Huffman, the supervisor of operations for Tour 1, and to the Tour 3 supervisor. At the time, only two transitional employees were employed on Tour 1, Ms. Lewis and Amy Heater. Patty Lewis is a black female who, on November 13, 2003, was 44 years old. Amy Heater is a white female who, at that time, was 28 years old. After receiving the aforementioned instructions from Mr. Morgan, Mr. Huffman elected to maintain Amy Heater and to terminate Ms. Lewis. Ms. Lewis was informed that she was being released from service at USPS at the end of her shift on November 13, 2003.

On November 14, 2003, Ms. Lewis notified the USPS Equal Employment Opportunity ("EEO") office that she believed she was the victim of employment discrimination. The acting manager of the EEO office, Vicki Archer, informed Ms. Lewis by letter of available dispute resolution procedures. Ms. Lewis agreed to participate in the USPS "REDRESS" ("Resolve Employment Disputes, Reach Equitable

Solutions Swiftly") mediation program. The EEO office retained a mediator and scheduled the mediation for December 4, 2003.

REDRESS mediation was conducted as scheduled. During the mediation, the parties executed a Settlement Agreement Form. Subsequently, management officials at the USPS rejected the terms of the Settlement Agreement Form and informed Ms. Lewis that the Settlement Agreement Form would not be approved. The parties now disagree as to the affect of the settlement agreement.

### III. <u>Legal Standard</u>

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986). "The burden then shifts to the nonmoving party to come forward with facts sufficient to create a triable issue of fact." <u>Temkin v. Frederick County Comm'rs</u>, 945 F.2d 716, 718 (4th Cir. 1991), <u>cert. denied</u>, 502 U.S. 1095 (1992)(citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986)).

However, as the United States Supreme Court noted in <u>Anderson</u>, "Rule 56(e) itself provides that a party opposing a properly

supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256. "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250; see also Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979)(Summary judgment "should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law." (citing Stevens v. Howard D. Johnson Co., 181 F.2d 390, 394 (4th Cir. 1950))).

In Celotex, the Court stated that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Summary judgment is not appropriate until after the non-moving party has had sufficient opportunity for discovery. See Oksanen v. Page Mem'l Hosp., 912 F.2d 73, 78 (4th Cir. 1990), cert. denied, 502 U.S. 1074 (1992). In reviewing the supported underlying facts, all

inferences must be viewed in the light most favorable to the party opposing the motion. See <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

IV. <u>Discussion</u>

A. <u>Title VII: Counts I and II</u>

In her first amended complaint, Ms. Lewis asserts two counts of discrimination. Count I alleges discrimination on the basis of age, race, and sex. Ms. Lewis alleges that while working for the USPS she experienced disparity in work assignments and other discriminatory treatment by Caucasian employees of the Clarksburg Facility. Count II alleges retaliation against Ms. Lewis for bringing a Title VII charge in the EEO office. Ms. Lewis alleges that the USPS conducted the REDRESS mediation in bad faith in retaliation for the fact that she raised a Title VII charge with the EEO office. As explained in detail below, because Ms. Lewis has not met the burden of showing that the USPS's articulated reason for her termination was pretextal, and because there is no sufficient evidence of bad faith mediation, summary judgment for the USPS is appropriate on both counts.

1. <u>Discrimination</u>

Title VII of the Civil Rights Act makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment,

because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a).

In the context of Title VII actions which contain allegations of discrimination, absent direct evidence of discrimination, federal courts apply the three-stage burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), when deciding summary judgment motions. See Tinsley v. First Union Nat'l Bank, 155 F.3d 435, 442 (4th Cir. 1998); Karpel v. Inova Health Sys. Servs., 134 F.3d 1222, 1228 (4th Cir. 1998). Pursuant to the McDonnell Douglas framework, the plaintiff carries the initial burden of establishing a prima facie case of discrimination. McDonnell Douglas, 411 U.S. at 802-04. Once the plaintiff establishes a prima facie case, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. Id. If the employer offers such a reason, the burden shifts back to the plaintiff to establish that the articulated reason was a pretext or coverup for unlawful discrimination. See Murrell v. Ocean Mecca Motel, Inc., 262 F.3d 253, 257 (4th Cir. 2001) (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506-507 (1993)).

In its motion for summary judgment, the USPS concedes, for the sake of argument, that Ms. Lewis has made out a prima facie case of

intentional discriminatory treatment.[3] Additionally, Ms. Lewis has conceded that the defendant has articulated a legitimate, nondiscriminatory reason for its employment decision -- specifically, that Amy Heater was a better employee than Ms. Lewis. Thus, the only remaining issue is whether the USPS's articulated reason for terminating Ms. Lewis is actually a pretext for discrimination.

"Pretext" means a dishonest explanation, "a lie rather than an oddity or error." O'Regan v. Arbitration Forums, Inc., 246 F.3d 975, 983 (7th Cir. 2001). An employee can satisfy her burden of proving pretext by showing that the employer's proffered explanation is "unworthy of credence." Raad v. Fairbanks North Star Borough School Dist., 323 F.3d 1185 (9th Cir. 2003). Evidence indicating the nondiscriminatory reasons given by the employer are

---

[3]When determining whether the petitioner has made a prima facie case of employment discrimination, the petitioner must prove that: (1) she is a member of a protected class; (2) she was competently performing her position; (3) she suffered an adverse employment action; and (4) the adverse action took place "under circumstances giving rise to an inference of unlawful discrimination." Taylor v. Virginia Union Univ., 193 F.3d 219, 230 (4th Cir. 1999)(citing Hughes v. Bedsole, 48 F.3d 1376, 1383 (4th Cir. 1995)).

In the present case, the petitioner has put forth sufficient evidence that: (1) she was a member of a protected class; (2) she was competently performing her transitional employee position at the USPS; and (3) her employment was terminated. Because neither party provided argument in their briefs regarding the fourth prong of the prima facie case, this Court makes no independent ruling as to whether Ms. Lewis has met her burden of proving a prima facie case. However, because the USPS has conceded that Ms. Lewis has established a prima facie case, the issue need not be definitively resolved.

false, coupled with evidence supporting the _prima facie_ case, may in some cases permit a finding of unlawful discrimination. _Reeves v. Sanderson Plumbing Prods., Inc.,_ 530 U.S. 133, 142 (2000). However, the United States Court of Appeals for the Fourth Circuit has held, when reviewing an employer's articulated reason for discharge, that the court "does not sit as a kind super-personnel department weighing the prudence of employment decisions made by firms charged with employment discrimination . . . ." _DeJarnette v. Corning, Inc._, 133 F.3d 293, 299 (4th Cir. 1998)(quoting _Giannopoulos v. Brach & Brock Confections, Inc._, 109 F.3d 406, 410 (7th Cir. 1997)); _see also_ _Jimenez v. Mary Washington Coll._, 57 F.3d 369, 377 (4th Cir. 1995)(stating that "Title VII is not a vehicle for substituting the judgment of the court for that the employer").

Mr. Huffman's articulated reason for selecting Ms. Lewis for termination instead of Amy Heater was that Amy Heater was an above-average worker while Ms. Lewis was only an average one. Mr. Huffman further indicated that Amy Heater required little supervision, found work to do, stayed busy, and was better than most career USPS employees. Ms. Lewis attempts to show that this articulated reason is pretextual primarily by arguing that the reason is false -- i.e. that Ms. Lewis, in fact, was a better worker than Amy Heater. In support of this contention, Ms. Lewis

offers the statements of two former co-workers, Ron Clevenger[4] and Reona Heater.[5]  In an affidavit, Reona Heater states that Ms. Lewis "had to strip flats and Amy never had to because she didn't do a good job or was too slow."  This statement, which is the only admissible evidence that Ms. Lewis has offered to show the falsity of the USPS's articulated reason for termination, is plainly insufficient to prove pretext.

It is well-established that an employer is free to set its own performance standards, provided such standards are not a "mask" for discrimination.  <u>Palucki v. Sears, Roebuck & Co.</u>, 879 F.2d 1568, 1571 (7th Cir. 1989).  Further, "'[i]t is the perception of the decision maker which is relevant' not the self-assessment of the plaintiff" or of the plaintiff's coworkers.  <u>See</u> <u>Evans v. Tech. Applications & Serv. Co.</u>, 80 F. 3d 954, 960-61.  In this case, the ultimate decision regarding which transitional employee to terminate rested with Mr. Huffman, a Tour 1 supervisor.  Mr. Huffman made the decision to terminate Ms. Lewis and gave a rational and reasonable basis for the decision.  The mere fact that a lower ranking employee disagrees with his decision, is simply not

---

[4]Ms. Lewis attempts to use Mr. Clevenger's recollection about a statement made by a Tour 1 supervisor, Rick Montgomery, to support her argument.  Because she is offering the statement to prove the truth of the matter allegedly asserted by Mr. Montgomery, the statement is hearsay and will be excluded from consideration here.

[5]No relation to Amy Heater.

enough to show that the reason articulated by Mr. Huffman for Ms. Lewis's termination is false or not worthy of credence. Indeed, there is no sufficient evidence in this case that Ms. Lewis's qualifications for the transitional employee position are demonstrably superior to those of Amy Heater. Therefore, Ms. Lewis has failed to show that the USPS's proffered explanation is false or unworthy of credence.

Additionally, Ms. Lewis has not presented sufficient evidence to show that a discriminatory reason more likely motivated the USPS than the reason articulated. Ms. Lewis believes it is significant that she was the only black employee at the Clarksburg facility and that the other transitional employee selected for release on November 13, 2003 was a 49 year old woman. These facts, in isolation, are not enough to prove a pattern or practice of discrimination by the USPS. Although statistical evidence revealing race, age, or gender imbalances in employment actions may be relevant in some cases to show pretext, Obrey v. Johnson, 400 F.3d 691, 695 (9th Cir.), Ms. Lewis has offered only isolated incidents which are insufficient to prove pretext in the absence of greater statistical evidence supporting a pattern or practice of race, age[6], or gender discrimination.

---

[6]Age discrimination, unlike race and gender discrimination, is not governed by Title VII. Rather, claims of discrimination based on age fall under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621-634. However, in cases such as this one where the plaintiff lacks direct evidence of age discrimination,

Further, the alleged incidents of harassment that Ms. Lewis raises also do not support a conclusion that the USPS likely terminated Ms. Lewis for a discriminatory reason. The incidents that Ms. Lewis complains of include alleged disparities in work assignments and several insensitive race-related comments and jokes made by co-workers. There is no evidence that the work assignment conflicts Ms. Lewis had with Mr. Huffman were the result of racial, age, or gender bias. The fact that on occasion the schedule was changed in favor of Ms. Lewis's white coworkers and to Ms. Lewis's disliking, without more, is not enough to create an inference of discrimination.

Also, there is no evidence that Mr. Huffman or any other USPS management official made racially inappropriate statements to Ms. Lewis or other employees or that USPS management condoned such statements by employees. Discriminatory remarks by persons who were not decision-makers or involved in the adverse employment decision are usually not admissible to prove a discriminatory motive by the employer. <u>Willis v. Marion Co. Auditor's Office</u>, 118 F.3d 542 (7th Cir. 1997). In this case, Ms. Lewis points to several instances in which coworkers made inappropriate racial jokes and comments and one instance in which a co-worker referred to her with a racial slur. None of these occurrences can be

courts apply the same three-step burden-shifting analysis applicable in Title VII cases. <u>Reeves,</u> 530 U.S. at 143.

attributed to management. Indeed, the record shows that when incidents were reported to management, appropriate steps were taken to address the matters. The stray remarks of Ms. Lewis's coworkers are insufficient to prove discriminatory intent by the USPS.

Ms. Lewis has not satisfied her burden of proving that the USPS's proffered reason for her termination was pretext for a discriminatory motive. Therefore, the USPS's motion for summary judgment as to Ms. Lewis's claim of intentional discriminatory treatment is granted.

      2.  <u>Retaliation</u>

In addition to prohibiting disparate treatment, Title VII also makes it an unlawful employment practice for an employer to retaliate against an employee for making any charges against the employer under Title VII. <u>See</u> 42 U.S.C. § 2000e-3(a). In Count II of the amended complaint, Ms. Lewis asserts that the USPS retaliated against her by engaging in bad faith mediation. After Ms. Lewis was terminated, she brought a Title VII discrimination charge in the EEO office. Ms. Lewis seems to argue that because she made this charge, the USPS retaliated against her by agreeing to participate in a REDRESS mediation that was essentially a sham.

There is no evidence in this case that the USPS engaged in bad faith mediation in an effort to retaliate against Ms. Lewis for bringing a Title VII charge in the first place. Standard EEO procedures for arbitrating Ms. Lewis's claim were followed. The

fact that Ms. Lewis does not like the outcome of the mediation does not indicate that the USPS retaliated against her by mediating in bad faith. Therefore, the defendant's summary judgment motion on the issue of retaliation[7] is granted.

    3.   <u>Hostile Work Environment</u>

In the amended complaint, Ms. Lewis also alleges facts that could give rise to a hostile work environment claim. In its motion for summary judgment, the USPS contends that under the totality of the circumstances, the incidents of harassment alleged by Ms. Lewis are not sufficiently severe or pervasive to survive summary judgment on a hostile work environment claim. This Court agrees.

In order to establish a <u>prima facie</u> hostile work environment claim, a plaintiff must show: "(1) the subject conduct was unwelcome; (2) it was based on the sex [race or age] of the plaintiff; (3) it was sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) it was imputable on some factual basis to the employer." <u>Spicer v. Virginia, Dep't of Corrections,</u> 66 F.3d 705, 710 (4th Cir. 1995)(citing <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 20 (1993)). The plaintiff must demonstrate that the workplace

---

[7]To the extent that Ms. Lewis's amended complaint can be construed to allege that she was terminated in retaliation for complaining about racial statements made by her co-workers, that claim also fails to survive summary judgment. There is no evidence that Mr. Huffman was aware of any complaints that Ms. Lewis may have made to management about him or the work assignments that she was receiving.

"was both subjectively and objectively hostile." <u>Von Gunten v.</u> <u>Maryland</u>, 243 F.3d 858, 870 (4th Cir. 2001), <u>abrogated on other</u> <u>grounds by</u> <u>Burlington Northern and Santa Fe Ry. Co. v. White,</u> 126 S.Ct. 2405 (2006).

In determining whether conduct is sufficiently severe or pervasive to permit a reasonable jury to find a hostile work environment, a court must consider the totality of the circumstances including: (1) its frequency; (2) its severity; (3) whether it is physically threatening or humiliating, or instead constitutes mere offensive utterances; (4) whether it unreasonably interferes with the plaintiff's work performance; and (5) whether it resulted in psychological harm. <u>Harris</u>, 510 U.S. at 21 (1993); <u>Connor</u>, 227 F.3d at 193.

This Court finds that Ms. Lewis cannot meet the four-prong test set out in <u>Spicer v. Virginia, Dept' of Corrections</u>, 66 F.3d 705, 710 (4th Cir. 1995). Specifically, Ms. Lewis has failed to demonstrate that her work environment at the Clarksburg Facility was "so polluted with sexual [racial or age] harassment that it altered the terms and conditions of her employment." <u>Anderson v.</u> <u>G.D.C., Inc.</u>, 281 F.3d 452, 458-9 (4th Cir. 2002). Even if all of Ms. Lewis's allegations are accepted as true,[8] when viewed in

_____

[8]The USPS argues that some of the incidents of harassment alleged by Ms. Lewis should be disregarded by this Court because Ms. Lewis failed to exhaust her administrative remedies as to those claims. It is unnecessary to reach this issue, however, because even when the allegedly unexhausted incidents are considered, Ms.

totality, the instances of harassment identified by Ms. Lewis do not demonstrate the kind of severe or pervasive conduct that is necessary to support a finding of hostile work environment.

Ms. Lewis has identified only a handful of incidents spread out over two years. Many of incidents Ms. Lewis complains of involve scheduling conflicts that, while they may show favoritism on the part of Tour 1 supervisors, do not appear to stem from discriminatory motives. Of the remaining incidents, two involved racially insensitive comments or jokes overheard by Ms. Lewis, two involved racial slurs or comments directed specifically toward Ms. Lewis, and two involved unwanted touching by co-workers. Together, these temporally isolated incidents do not create the kind of frequency of conduct necessary to meet the requisite threshold for pervasiveness.

Additionally, none of the incidents rose to a level of severity capable of supporting a hostile work environment claim in and of itself. None of the incidents was physically threatening or appears to have resulted in psychological harm. The most egregious of the cited incidents is when "Chad," a co-worker of Ms. Lewis's allegedly called her a "nigger." Although the use of racial slurs is reprehensible and inexcusable, a single racially offensive utterance does not permeate a work environment with hostility and

---

Lewis still cannot show that the alleged harassment was severe and pervasive.

abuse.  See Faragher v. City of Boca Raton, 524 U.S. 775 at 788
(1998)(noting that isolated incidents of abusive language will
generally not meet the requisite threshold of severity or
pervasiveness).

Because Ms. Lewis has not alleged facts sufficient to support
a finding of severe or pervasive harassment, this Court finds that
no genuine issues of material fact exist as to plaintiff's hostile
work environment claim.  Accordingly, summary judgment is granted
for the USPS on the issue of hostile work environment.

B.   Breach of Settlement Agreement: Count III

In Count III of the amended complaint, Ms. Lewis alleges that
she and the USPS entered into a binding settlement agreement as to
her discrimination claims at the conclusion of the REDRESS
mediation on December 4, 2003.  Ms. Lewis seeks summary judgment on
this count and requests that the Court award her any damages to
which she is entitled under the alleged settlement agreement.  The
USPS also seeks summary judgment on this count and asserts that a
settlement agreement between Ms. Lewis and the USPS never formed.
Because a condition precedent to the formation of the settlement
agreement never occurred, this Court finds that a contract never
arose between the parties in this case.

A settlement agreement is a contract and is, therefore,
governed by the same legal principles applicable to contracts
generally.  See Hensle v. Alcon Labs., Inc., 277 F.3d 535, 540 (4th

Cir. 2002). In the law of contracts, conditions may relate to the existence of contracts or to the duty of immediate performance under them. 13 <u>Williston on Contracts</u> § 38:4 (4th ed.). Thus, there may be conditions to the formation of a contract, or conditions to the performance of the contract. <u>Id.</u>

In this case, the parties signed a two-page "Settlement Agreement Form" at the conclusion of the mediation on December 4, 2003. The Settlement Agreement Form contained preprinted provisions and spaces where additional terms could be written or typed in. Towards the top of the form was the following preprinted statement: THIS AGREEMENT DOES/DOES NOT NEED TO BE APPROVED BY: _____ (e.g. union official, management official, labor relations, etc.). In the Settlement Agreement Form that was ultimately signed, the word "DOES" is circled, the words "DOES NOT" are crossed out, and the words "management official" are handwritten onto the blank line so that the provision reads: "THIS AGREEMENT DOES NEED TO BE APPROVED BY: management official."

Additionally, the Settlement Agreement Form that the parties signed includes two handwritten paragraphs. The first handwritten paragraph spells out the compensation that Ms. Lewis would receive in exchange for the settlement of her discrimination claims. The second handwritten paragraph reads as follows:

> Counselee [Ms. Lewis] and management official understand
> that the above provisions 1 through 4 are contingent on
> Postal Service approval upon presentation from Debbie
> Johnson and that if the terms are not complied with,

18

counselee's No Agreement Letter shall become effective as
it relates to counselee's instant EEO case.

The Settlement Agreement Form was signed on the second page by
Ms. Lewis, Debbie Johnson (representing the USPS), Gary Kincade
(representing Debbie Johnson), Troy Morgan (representing Ms.
Lewis), and Michael Buchanan (the mediator). The form was also
initialed by all of the above participants on each of the two pages
of the form. Sometime during the mediation the mediator also
executed a form entitled "NO AGREEMENT LETTER." The preprinted
portion of that form states that the parties were unable to resolve
their dispute through mediation. At the bottom of the form the
mediator added the following handwritten paragraph:

> *This No Agreement Letter is prospective only in the
> event the terms of the settlement agreement are unable to
> be met by the Postal Service.

The mediator is the only party that signed the No Agreement Letter.

Following the mediation, Debbie Johnson presented the
settlement agreement to someone in USPS management and management
refused to approve the agreement. On December 8, 2003, Debbie
Johnson telephoned Ms. Lewis and informed her that the terms in the
Settlement Agreement Form had not been approved by the USPS.
Subsequently, Ms. Lewis filed this action and asserted a breach of
contract claim.

The USPS argues that no contract was formed because of lack of
mutual assent. The USPS asserts that because the agreement form
included language expressly requiring management approval of the

settlement terms, there was no "meeting of the minds" over the Settlement Agreement Form. Ms. Lewis, on the other hand, argues that a contract was formed when the parties executed the Settlement Agreement Form. Ms. Lewis contends that the provisions requiring approval by the USPS do not give the USPS unfettered discretion to reject the agreement. Rather, Ms. Lewis argues that the USPS is free to escape the agreement only if it is financially or legally unable to satisfy the terms of the agreement.

The plain language of the Settlement Agreement Form provides the answer to this dispute. The parties circled the word "DOES" indicating that the agreement must be approved by a USPS management official. Additionally, the handwritten portion provides that settlement is "contingent on Postal Service approval." It is plain from these provisions that USPS management approval of the terms of the Settlement Agreement Form was a condition precedent to the formation of a binding contract in this case.

Although extrinsic evidence is not necessary to reach this conclusion, the actions of the mediator confirm that it was the intent of the parties that an agreement be formed only upon approval of USPS management. Contemporaneous with the parties' execution of the Settlement Agreement Form, the mediator filled out a No Agreement Letter which he sent to the EEO office with the Settlement Agreement Form. Clearly, if an agreement had already been formed between the parties, it would have been illogical for

the mediator to send the No Agreement Letter to the EEO. By including the No Agreement Letter, the mediator's actions confirm that the parties contemplated two potential outcomes following the execution of the Settlement Agreement Form: (1) that the USPS would approve the Settlement Agreement Form and it would <u>then</u> become a binding contract or (2) that the USPS would not approve the Settlement Agreement form and no agreement would exist.

Because the Settlement Agreement Form was not approved by USPS management, the condition precedent to formation of a settlement agreement was not met. Therefore, no settlement agreement exists in this case. Accordingly, because no settlement agreement was formed, the USPS cannot be found to have breached an agreement with Ms. Lewis. Thus, summary judgment for the defendant is granted on Count III and summary judgment for the plaintiff is denied on Count III.

Because the plaintiff has indicated that Counts IV and V (fraudulent concealment and negligent misrepresentation, respectively) of the amended complaint are merely equitable doctrines pled in anticipation of a defense of failure to exhaust administrative remedies, rather than independent causes of action, it is not necessary to undertake an analysis of those counts. Accordingly, summary judgment for the defendant is appropriate on all counts.

## V.  Conclusion

For the foregoing reasons, the plaintiff's motion for partial summary judgment as to Count III of plaintiff's first amended complaint is DENIED and the defendant's motion for summary judgment is GRANTED.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.  Pursuant to Federal Rule of Civil Procedure 58, the Clerk is DIRECTED to enter judgment on this matter.

DATED:   February 2, 2007


/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE